UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SUNSET MARINE, INC., JOHN EAKLE d/b/a )<br>SUNSET MARINE, INC., JOHN EAKLE, )<br>Individually, AND CHADWICK L. )<br>McDONALD, Special Administrator of the )<br>Estate of Kris McDonald, Deceased, )<br>)<br>Defendants. ) | Case No. 06-1080 |

## O R D E R

This matter is now before the Court on Cross Motions for Summary Judgment and a Motion for Default Judgment. For the reasons set forth below, the Motion for Summary Judgment by Sunset Marine ("Sunset") and John Eakle d/b/a Sunset ("Eakle") [#25] is DENIED, and St. Paul's Motion for Summary Judgment [#27] is GRANTED. The Motion for Default Judgment against Eakle individually [#38] is also GRANTED.

**FACTUAL BACKGROUND**

This insurance coverage dispute arises from an accident that occurred on June 12, 2004. Decedent, Kris McDonald was a passenger on a golf cart being driven at the Eastport Marina. She was thrown from the golf cart and struck her head on the pavement, causing her death.

At all relevant times, Eakle was the harbormaster for Eastport Marina and managed the marina for the City of East Peoria, Illinois (the "City"). He was also the President and

sole employee of Sunset. Sunset entered into a Management Agreement with the City in December 2002. The Management Agreement provides:

> 1. <u>Appointments</u>: The City hereby appoints and retains Marine as the sole managing agent of Eastport and Marine and hereby accepts such appointment and agrees to manage and operate Eastport in accordance with the terms and conditions of this Agreement.
>
> * * *
>
> 4. Marine's Personnel:
>
> * * *
>
> (d) During the term of this Agreement, Marine shall cause its principal, John Eakle, to provide management services on behalf of Marine in connection with its management of Eastport . . . John Eakle shall be in charge of all aspects of Eastport operations and shall serve as Harbor Master.
>
> * * *
>
> 15. Representations and Warranties; Indemnification:
>
> * * *
>
> (b) Marine shall defend, indemnify and hold the City of East Peoria . . . harmless from and against any and all claims, actions, damages, expenses (including attorneys fees), losses or liabilities arising out of any claim made as a result of Marine's bad faith, recklessness, gross negligence, gross misconduct in its management and operation of Eastport, or arising out of any breach or claimed breach of any representation or any of its obligations pursuant to this agreement.
>
> (c) The City shall defend, indemnify and hold Marine . . . harmless from and against any

> and all claims, actions, damages, expenses (including attorneys fees), losses or liabilities arising out of any claim made as a result of the City's bad faith, recklessness, gross negligence, gross misconduct in its management and operation of Eastport, or arising out of any breach or claimed breach of any representation or any of its obligations pursuant to this Agreement.

On December 29, 2004, Chadwick McDonald, acting as the Special Administrator for the Decedent's Estate, filed a complaint in state court alleging wrongful death and negligent entrustment against Sunset, Eakle, Eastport Marina, and the City (the "underlying complaint"). The underlying complaint alleges that the golf cart belonged to Eakle, Sunset, or Eastport Marina, and that Eakle exercised control over the golf cart. It is also alleged that Eakle gave the driver of the golf cart permission to drive it knowing that the driver had consumed alcohol, was intoxicated, and that her ability to drive was impaired or alternatively that Eakle had negligently entrusted the golf cart to the driver.

St. Paul issued policy number GP09312454 to the City, with a policy period of May 1, 2004, to May 1, 2005 (the "Policy"). The Policy contains a Public Entity General Liability Protection coverage part with a $2,000,000 limit for each event and a $6,000,000 general total limit. The Policy also contains an Umbrella Excess Liability Protection (the "Umbrella Policy") coverage with a $10,000 deductible, limit of $5,000,000 for each event, and a general total limit of $5,000,000.

On June 9, 2005, Eakle wrote to St. Paul on behalf of himself and Sunset to notify it of the underlying litigation and to tender the defense to St. Paul. On September 9, 2005, Eakle wrote again, contending that he and Sunset are additional insureds under a St. Paul

policy, advising that he had exercised his right to select an attorney of his choice, and asserting St. Paul's obligation to reimburse him for the defense. That same day, an attorney purporting to represent Sunset and Eakle wrote to St. Paul again formally tendering the defense of the underlying litigation. On January 19, 2006, St. Paul wrote to Eakle and Sunset reserving its rights and informing them that they are not covered for the underlying litigation under the St. Paul policy.

On March 24, 2006, St. Paul filed this declaratory judgment action in which it seeks a declaration that it does not have a duty to defend or indemnify Sunset or Eakle in the underlying litigation. The parties have now filed cross motions for summary judgment. These motions are fully briefed, and this Order follows.

## DISCUSSION

I.    <u>Motions for Summary Judgment</u>

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." <u>Id.</u> at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986); <u>Cain v. Lane</u>, 857 F.2d 1139, 1142 (7th Cir. 1988).

- 4 -

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

Here, the Policy's coverage form provides in relevant part:

> This insuring agreement provides general liability protection for your operations. There are, of course, limitations and exclusions throughout this agreement that apply to that protection. As a result, this agreement should be read carefully to determine the extent of the coverage provided to you and other protected persons.
>
> * * *
>
> **Bodily injury and property damage liability**. We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:
>
> ❗ happens while this agreement is in effect; and
> ❗ is caused by an event.
>
> *Protected person* means any person or organization that qualifies as a protected person under the Who Is Protected Under This Agreement section.
>
> Right and duty to defend a protected person. We'll have the right and duty to defend any protected person against a claim or suit for injury or damage covered by this agreement. We'll have such right and duty even if all of the allegations of the

claim or suit are groundless, false, or fraudulent. But we won't have a duty to perform any other act or service.

**Who Is Protected Under This Agreement**

* * *

**Real estate managers**. Your real estate managers are protected persons only for their management of premises that you rent, lease, or borrow from others, or own. They may be persons or organizations.

The Policy also contains an Endorsement to the Public Entity General Liability Protection.

**PUBLIC SECTOR SERVICES**
**EXCLUDED OPERATIONS AND PREMISES ENDORSEMENT**
**How Coverage Is Changed**

The following is added to the Exclusions – What This Agreement Won't Cover section. This change excludes coverage.

**Excluded operations and premises**. We won't cover injury or damage or medical expenses that result from any of the following operations, including the ownership, maintenance, or use of any premises in those operations, which are indicated by an (X).

* * *

(X)   Airport, including any airfield, runway, hanger, terminal, or other property in connection with aviation activities

(X)   Dams, levees, or dikes

( )   Day care, day camp, nursery, or similar facility

(X)   Electric utility

( )   Fire district or department

(X)   Fireworks displays or exhibitions

(X)   Gas utility

(X)   Halfway house, emergency shelter, or other group home

    (X)  Hospital, nursing home, medical clinic, or other type of medical facility

    ( )  Housing project or authority

    (X)  Organized or sponsored racing or stunting activity or event involving wheeled vehicles, including skateboards and roller skates

    (X)  Port, harbor, or terminal district

    (X)  School district or system

    (X)  Transportation system

    ( )  Water utility

    (X)  Waterpark

    (X)  Riverboat and/or Riverboat gambling operations

    Operations of Sunset Marina

    Swimming Pool at East Port Marina

(hereinafter referred to as the "Exclusionary Endorsement.") The Umbrella Policy has similar provisions and exclusionary endorsements.

  St. Paul relies on this language in the Exclusionary Endorsement in arguing that the Policy unambiguously excludes coverage for the operations of Sunset.  Sunset also contends that the Exclusionary Endorsement is unambiguous, yet reaches a contrary conclusion as to coverage.  In support of its argument, Sunset suggests that the manner in which this text appears in the relevant section of the Exclusionary Endorsement is different from the way it is presented with respect to other items in this section, as the rest of the language presents multiple groups of categories together using commas and with single spacing rather than double spacing.  Accordingly, Sunset suggests that St. Paul is making a belated attempt to lump Riverboat and/or Riverboat Gambling operations with the

operations of Sunset. In other words, if the Exclusionary Endorsement intended to exclude Sunset, it should have read:

> (X)   Riverboat and/or Riverboat gambling operations, operations of Sunset Marine, or Swimming Pool at East Port Marina.

Under Illinois law, "the construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court and appropriate subjects for disposition by summary judgment." Konami (America) Inc. v. Hartford Ins. Co. of Illinois, 326 Ill.App.3d 874, 877, 761 N.E.2d 1277, 1281 (2002). "An insurance contract is to be interpreted from an examination of the complete document and not an isolated part." Western Casualty & Surety Co. v. Brochu, 105 Ill.2d 486, 496 (1985). As with other types of contracts, in construing the terms of an insurance policy, courts are to give effect to the intent of the parties as expressed by the terms of the agreement. Management Support Associates v. Union Indemnity Ins. Co. of New York, 129 Ill.App.3d 1089, 1092, 473 N.E.2d 405, 408 (1st Dist. 1984).

It is well-settled that where policy language is clear and unambiguous, it must be applied as written. United States Fire Ins. Co. v. Schnackenberg, 88 Ill.2d 1, 4 (Ill. 1981). The words of a policy should reasonably be given their plain, ordinary, and popular meaning, and courts must not construe the contract against the insurer when no real ambiguity exists or distort the meaning of words in order to reach a given result. Brochu, 105 Ill.2d at 496-97; Cobbins v. General Accident Fire & Life Assurance Co., 53 Ill.2d 285, 294 (1972).

As it is undisputed that the policy is unambiguous, the Court must give its terms their plain meaning and apply them as written. Although there is a slightly different font and

grouping of the items in the relevant exclusion, that font appears at various points throughout the policy where additional non-standard information has been added, and it is apparent that the exclusions in question were additional exclusions that were added into the list of standard exclusions for this particular policy.  The suggestion that St. Paul would have added in additional exclusions that it did not intend to exclude is nonsensical; there would have been no other logical reason for adding these three items under the Exclusionary Endorsement.

Although it also appears in this slightly different font, Sunset does not contest that "Riverboat and/or Riverboat gambling operations" is properly excluded.  Moreover, while Sunset notes the absence of an "(X)" in front of the "Operations of Sunset Marine" language, the Court makes the more compelling observation that there is not even a separate "(   )" in which to put an "X" in front of the words "Operations of Sunset Marine" or "Swimming Pool at East Port Marina" as there is in front of every other exclusion that is to be considered separately.

After careful consideration, the Court finds that the plain language of the Exclusionary Endorsement excludes coverage for the operations of Sunset, and this language must be applied as written.  Accordingly, Sunset is not covered under the Policy, and summary judgment is appropriately granted in favor of St. Paul.[1]

---

[1] Even assuming arguendo that the Exclusionary Endorsement could be deemed ambiguous, unrefuted evidence in the record would resolve the ambiguity in favor of St. Paul and a finding of no coverage.  Section 10 of the Management Agreement between the City and Sunset requires Sunset to obtain separate insurance coverage for its operation of the Eastport Marina and Sunset, with the City to reimburse Sunset for this coverage.  The St. Paul underwriting file also contains an insurance proposal, binder of coverage, and processing instructions which clearly list the operations of Sunset as excluded, and the underwriter who underwrote the Policy checked off the boxes for operations for Sunset on the list of exclusions on

II.       <u>Motion for Default Judgment</u>

St. Paul filed its Complaint on March 24, 2006, and the defendants were served with a waiver of summons on April 10, 2006. Eakle individually executed the waiver on April 15, 2006, while Eakle executed the waiver on behalf of Sunset and himself in his official capacity doing business as Sunset on April 29, 2006. Although Sunset and Eakle in his official capacity have entered their appearance, the attorney has indicated that he does not represent Eakle individually, nor has Eakle individually entered an appearance or filed an answer.

Accordingly, Eakle individually is in default, and St. Paul is entitled to default judgment against Eakle in his individual capacity.

## CONCLUSION

For the reasons set forth above, Sunset Marine and Eakle's Motion for Summary Judgment [#25] is DENIED, and St. Paul's Motion for Summary Judgment [#27] is GRANTED. Accordingly, the Court now declares that St. Paul has no obligation to defend or indemnify Sunset or Eakle under the Policy, and Sunset's counterclaim for declaratory judgment seeking an opposite conclusion is denied in its entirety. The Motion for Default Judgment against Eakle individually [#38] is also GRANTED. Plaintiff is directed to take

---

endorsement forms on the electronic processing instructions. The testimony of St. Paul's underwriter, Sue Steele, also indicates that the operations of Sunset were always intended to be excluded from the Policy, and Eakle has testified that he understood that he was required to obtain a separate insurance policy to cover Sunset and its operation of the Eastport Marina and obtained such a policy from Essex.

immediate action with respect to the one remaining Defendant, Chadwick L. McDonald, as the Special Administrator of the Estate of Kris McDonald.

ENTERED this 21st day of August, 2007.

                                                                                   s/ Michael M. Mihm  
                                                                                     Michael M. Mihm  
                                                                         United States District Judge